**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | | |
|---|---|---|
| LPP MORTGAGE, LTD., f/k/a LOAN PARTICIPANT PARTNERS, LTD., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 2011-094 |
| ARTHUR H. FERRIS, a/k/a ARTHUR F. HUNT, Individually and d/b/a P.C.E. (PHOTO CONSTRUCTION ENTERPRISE), BOBBY FERRIS, FLAGSTAR BANK, FSB and THE GOVERNMENT OF THE U.S. VIRGIN ISLANDS, BUREAU OF INTERNAL REVENUE, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

Attorneys:
**Richard H. Dollison, Esq.,**
St. Thomas, U.S.V.I.
        *For the Plaintiff*

**Eric S. Chancellor, Esq.,**
St. Croix, U.S.V.I.
        *For the Defendants Arthur H. Ferris, a/k/a*
        *Arthur F. Hunt, Individually and d/b/a P.C.E.*
        *(Photo Construction Enterprise), and Bobby Ferris*

**W. Mark Hillsman, Esq.,**
St. Thomas, U.S.V.I.
        *For the Defendant Flagstar Bank, FSB*

**Raymond T. James, Esq.,**
St. Croix, U.S.V.I.
        *For the Defendant Government of the U.S.*
        *Virgin Islands, Bureau of Internal Revenue*

## MEMORANDUM OPINION

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the Motion for Summary Judgment filed by Plaintiff LPP Mortgage, Ltd. f/k/a Loan Participant Partners, Ltd. ("Plaintiff" or "LPP"). (Dkt. No. 43). LPP seeks summary judgment on its action for debt and foreclosure against Defendant Arthur H. Ferris, a/k/a Arthur F. Hunt, Individually and d/b/a P.C.E. (Photo & Construction Enterprise) ("Arthur Ferris"), enforcing its priority lien on the property at issue; ordering the property to be sold at foreclosure sale; and foreclosing any junior liens on the property held by Defendants Flagstar Bank, FSB ("Flagstar") and the Government of the Virgin Islands, Bureau of Internal Revenue ("VIBIR").[1] Also before the Court is the Motion for Summary Judgment filed by Defendant and Cross-Claimant Flagstar, seeking summary judgment on its foreclosure cause of action against Cross-Claim Defendants Bobby Ferris and the VIBIR. (Dkt. No. 40). For the reasons that follow, the Court will grant in part and deny in part both motions.

## I.   BACKGROUND AND PROCEDURAL HISTORY

### A.  The LPP Note and Mortgage, and Motion for Summary Judgment

On September 28, 2011, LPP filed a Complaint against Arthur Ferris, his son Bobby Ferris, Flagstar, and VIBIR, alleging causes of action for debt and foreclosure of real property mortgage. (Dkt. No. 1). LPP asserts that Arthur Ferris defaulted on a Promissory Note and on a Mortgage regarding certain property (the "Property") described as:

> Plot No. 6P of Estate Rattan Queens Quarter, St. Croix, U.S.
> Virgin Islands, consisting of 0.7985 U.S. acre,/more or
> less, all as is more particularly shown and described on

---

[1] LPP also brought suit against Defendant Bobby Ferris as a person claiming interest in the property at issue, pursuant to 28 V.I.C. § 532.

Public Works Department Drawing No. 1934, dated February 4, 1966.

(Mortgage, Dkt. No. 44-2 at 2). The Complaint alleges that, on December 6, 1990, Defendant Arthur H. Ferris (a/k/a Arthur F. Hunt) and his wife Icie Ferris (a/k/a Icilma V. Hunt, a/k/a Icilma Ferris), executed a promissory note (the "Note") in which they promised to repay the U.S. Small Business Administration ("SBA") the principal sum of $55,600.00, together with interest at the rate of 4.00% per annum. (Dkt. No. 1, ¶ 8; Promissory Note, Dkt. No. 44-1). The Note called for monthly payments of $587.00 over ten years. *Id.* To secure payment on the Note, Arthur Ferris and Icie Ferris executed a real estate mortgage (the "Mortgage") on January 16, 1991 in favor of the SBA, which provided that they would "promptly pay the indebtedness evidenced by said promissory note at the times and in the manner therein provided." *Id.* ¶ 9; Mortgage, Dkt. No. 44-2 at 3. The Complaint further alleges that, on May 22, 2001, the Note and Mortgage were assigned to LPP by an "Assignment of Notes and Liens," recorded on August 22, 2001 and also on May 2, 2002. *Id.* ¶ 11; Assignment, Dkt. No. 44-3. On December 18, 2002, Icie Ferris passed away, leaving Defendant Arthur Ferris as the sole owner of the Property. *Id.* ¶ 12, Warranty Deed, Dkt. No. 44-5.

The Complaint states that Arthur Ferris failed to comply with the terms and conditions of the Note and Mortgage, in that monthly installments of principal and interest became due and were not paid, despite demand, and that Arthur Ferris was in default under those instruments. *Id.* ¶ 17. Pursuant to the terms of these documents, LPP elected to declare the entire unpaid principal sum due, plus accrued interest and other charges, totaling $101,638.60 through February 28, 2011. *Id.* ¶ 18.

Arthur Ferris and Bobby Ferris filed an Answer to LPP's Complaint. Although styled as an "Answer and Counterclaim," the Answer did not contain a Counterclaim but rather four

affirmative defenses. (Dkt. No. 17). Flagstar answered LPP's Complaint and filed a Cross-Claim against Defendants Bobby Ferris and VIBIR. (Dkt. No. 18). VIBIR answered and filed a Cross-Claim against Defendants Arthur Ferris and Bobby Ferris. (Dkt. No. 19). Subsequently, the parties engaged in discovery, during which LPP served Requests for Admissions on Arthur Ferris and Bobby Ferris. (Dkt. No. 38-1). Neither Defendant responded.

On July 31, 2012, LPP filed its Motion for Summary Judgment (Dkt. No. 43), accompanied by a Statement of Undisputed Facts (Dkt. No. 44) and a Memorandum of Law. (Dkt. No. 45). In its Memorandum, LPP contended that Arthur Ferris admitted all of the essential elements of the foreclosure and debt causes of action by not responding to its Requests for Admissions, and argued that Flagstar's and VIBIR's subordinate interests in the Property should be foreclosed and the priority of liens be determined. (Dkt. No. 45).

Attached to LPP's Statement of Undisputed Facts was an Affidavit of Account Officer, submitted by Ralph S. Wheatly, Vice-President of CLMG Corp., LPP's loan servicing agent. (Dkt. No. 44-10). In his Affidavit, Mr. Wheatly brought Arthur Ferris' indebtedness current as of July 26, 2012. He averred that the total amount due and owing was $104,895.19, consisting of $36,282.62 in principal; $18,691.24 in interest capitalized in accordance with the terms of the Note and Mortgage and accruing at the rate of $3.98 per day until the date of judgment; and $49,921.33 for payment of delinquent taxes, force place insurance, legal fees, and costs. (Dkt. No. 44-10 ¶ 10). Mr. Wheatly averred that, during the pendency of the action and prior to the foreclosure sale, LPP might have to pay real property taxes, insurance premiums, and other charges, as well as costs and fees (including attorney's fees) that, pursuant to the terms of the Mortgage, would become part of the principal indebtedness. *Id.* ¶ 11.

LPP's counsel, Richard H. Dollison, Esq., a partner in the law firm of Duensing, Casner, Dollison & Fitzsimmons, submitted an affidavit to which he attached an exhibit detailing the costs and attorney's fees expended in pursuing the action, totaling $27,691.32. (Dkt. No. 45-2).

Arthur Ferris opposed LPP's Motion for Summary Judgment (Dkt. No. 51), and LPP filed a Reply. (Dkt. No. 53).

In June 2013, the Court entered an Order requiring LPP to: (1) identify the provisions in the loan documents which provided for capitalization of interest, and how capitalization of interest related to the per diem interest rate; (2) specify what part of the $49,921.33 was requested for delinquent taxes, force place insurance, legal fees, and costs, and provide documentation substantiating those figures; and (3) explain why the hourly rates of certain employees who worked at LPP's law firm fluctuated from ten to fifty dollars per hour, and what positions those persons held. (Dkt. No. 57). In the supplemental filings submitted in response to the Court's Order, LPP identified the provisions in the Note and Mortgage that allowed for capitalization of interest and stated that there was no capitalization of expenses; showed how it calculated the accrued interest; and specified the amounts paid in real property taxes, force place insurance, legal fees and costs, with documentation of those costs. (Dkt. No. 59-1). In addition, Mr. Dollison submitted a supplemental affidavit in which he explained why the hourly billing rates at the law firm varied, and what positions the persons who worked on the case held. (Dkt. No. 59).

**B.  The Flagstar Note and Mortgage, and Motion for Summary Judgment**

In its Cross-Claim against Defendant Bobby Ferris for debt and foreclosure, and against Defendant VIBIR for foreclosure, Flagstar alleged that, on July 30, 2007, Defendant Bobby Ferris executed and delivered a promissory note (the "Flagstar Note") in which he promised to

pay Flagstar the principal sum of $184,000.00, together with interest at the rate of 6.875% per annum. (Flagstar Cross-Claim, Dkt. No. 18 ¶ 1; Flagstar Note, Dkt. No. 18-1). The Flagstar Note called for monthly payments of $1,207.75 over thirty years. *Id.* As a condition of the loan, Bobby Ferris was required to escrow funds each month for hazard insurance and property taxes, which brought his monthly payment to $1,589.17. (Dkt. No. 18 ¶ 2, Flagstar's Notice of Admissions, Dkt. No. 39-1 ¶ 3).

The Cross-Claim alleged that the Flagstar Note was secured by a Mortgage on the Property (the "Flagstar Mortgage") also executed on July 30, 2007 by Bobby Ferris in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), acting as nominee for Flagstar. (Dkt. No. 18 ¶ 3; Flagstar Mortgage, Dkt. No. 18-2).

The Cross-Claim went on to allege that Bobby Ferris defaulted on the Flagstar Note and Mortgage by failing to pay principal and interest when due, and because he allowed the present action to be brought which could result in forfeiture of the Property or impairment of Flagstar's interest. (Dkt. No. 18 ¶ 6). The Cross-Claim further alleged that Bobby Ferris was notified of his default by letters dated February 19, 2010 and March 11, 2010; he failed to cure the default; and Flagstar elected to declare the entire unpaid principal sum plus interest and late charges due. *Id.* ¶¶ 7-8; Dkt. Nos. 18-3, 18-4. As a result of the default, Bobby Ferris owed Flagstar the sum of $213,797.26 through December 1, 2011 with interest and late charges accruing until judgment. *Id.* ¶ 8.

Bobby Ferris filed an Answer to Flagstar's Cross-Claim. (Dkt. No. 21). Flagstar served a Request for Admissions on him (Dkt. No. 39-1), and he did not respond. Flagstar then filed a Notice of Admissions stating that, due to the non-response, its Requests must be deemed admitted pursuant to Rule 36. (Dkt. No. 39). The Court subsequently granted Flagstar's Motion

to Compel Discovery, and issued an Order deeming admitted Flagstar's Requests for Admissions. (Dkt. No. 47).

In July 2012, Flagstar filed a Motion for Summary Judgment against Bobby Ferris and VIBIR (Dkt. No. 40), accompanied by a Memorandum of Law. (Dkt. No. 41). Flagstar attached to its Memorandum of Law a "Declaration of Flagstar Bank, FSB of Amounts Due," by Sean Kelly, a Flagstar Vice-President (Dkt. No. 41-1), and two Declarations of Counsel in Support of Attorney's Fees—one by W. Mark Hillsman, Esq., of Norman Jones, P.C., Flagstar's current counsel (Dkt. No. 41-2), and the other by A. Jennings Stone, Esq. of BoltNagi, Flagstar's former counsel. (Dkt. No. 41-3). In its Memorandum of Law, Flagstar contends that the pleadings, admissions, and the Kelly Declaration demonstrate that Bobby Ferris executed and delivered the Note and Mortgage; that Bobby Ferris defaulted under those documents by failing to make required payments; and that it had the right to foreclose. (Dkt. No. 41 at 2). In addition, Flagstar acknowledged that there was no issue as to the priority of interests in the Property, as LPP's Mortgage "is first in time having been executed and recorded against the recorded property prior to Flagstar's mortgage, a fact which Flagstar does not dispute," and that VIBIR's liens were filed after Flagstar's Mortgage was recorded, making them subordinate to Flagstar's lien—a fact VIBIR admitted in its Answer to Flagstar's Cross-Claim. *Id.* at 2-3. In his Declaration, Mr. Kelly asserted that, as of August 1, 2012, the principal sum of $179,319.66 was due and owing to Flagstar, in addition to interest of $32,875.20 (accruing at $33.78 per diem); late charges of $1,813.20; escrow advance of $7,475.53; and inspection fees of $369.50; for a total of $221,853.09. (Dkt. No. 41-1 ¶ 12).

Flagstar's current counsel, W. Mark Hillsman, Esq., submitted a declaration and billing records requesting attorney's fees of $15,625.00 and costs of $1,700.50 from November 2011

through July 2012. (Dkt. No. 41-2). Mr. Hillsman stated that the Jones law firm had been retained by Flagstar's title insurance company to represent Flagstar in the litigation, and that previously, Flagstar was represented by A. Jennings Stone of the law firm of BoltNagi PC. (Dkt. No. 41-2, ¶ 3). Mr. Stone provided a separate Declaration of Counsel in Support of Attorney's Fees, and billing records, dating from May 2010 through July 2012, in which he sought $3,131.25 in legal fees and $261.00 in costs. (Dkt. No. 41-3).

Bobby Ferris opposed Flagstar's Motion for Summary Judgment (Dkt. No. 50), and Flagstar filed a Reply. (Dkt. No. 52).

On June 26, 2013, the Court entered an Order requiring Flagstar to provide a supplemental affidavit, explaining how its late charges were computed and what costs were included in the $7,475.53 escrow advances. (Dkt. No. 58). Flagstar complied with that Order and brought all amounts due and owing current as of July 19, 2013. (Dkt. No. 60). The Affidavit by a Flagstar Assistant Vice President set forth that Bobby Ferris owed the principal sum of $179,319.99; accrued interest of $44,784.02; late charges of $2,598.92; escrow advances of $15,137.94, comprised of real property taxes and premiums for hazard insurance; and inspection fees of $498.00; for a total amount due of $242,338.92. (Dkt. No. 60-1 ¶ 10).

### C. The VIBIR Cross-Claim

In its Complaint, LPP named VIBIR as a Defendant because VIBIR had recorded subordinate liens against the Property. On November 12, 2009, VIBIR recorded a lien for Bobby Ferris' unpaid income taxes in the amount of $37,135.51, and on March 25, 2010, VIBIR recorded another lien for Bobby Ferris's unpaid income taxes in the amount of $15,713.43. (Dkt. No. 1 ¶ 16; Dkt. Nos. 44-8 and 44-9).

In its Answer to the Complaint, VIBIR asserted a Cross-Claim against Arthur and Bobby Ferris, stating that they were liable for assessed but unpaid income taxes plus accrued penalties and interest, and that VIBIR was entitled to foreclose on them. (Dkt. No. 19). Arthur and Bobby Ferris answered VIBIR's Cross-Claim. (Dkt. No. 22). VIBIR did not move for summary judgment. Accordingly, its Cross-Claim remains outstanding following the adjudication of the Motions for Summary Judgment addressed herein.

## II. DISCUSSION

### A. Applicable Legal Principles

#### 1. Summary Judgment Standard

"Summary judgment is proper where the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Nicini v. Morra*, 212 F.3d 798, 805-06 (3d Cir. 2000) (en banc); *see also* Fed. R. Civ. P. 56(a). "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). A factual dispute is deemed genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In reviewing the evidence, the court may not weigh the evidence and must give the nonmoving party the benefit of all reasonable inferences. *Reedy v. Evanson*, 615 F.3d 197, 210 (3d Cir. 2010) (citations omitted); *Bray v. Marriott Hotels*, 110 F.3d 986, 989 (3d Cir. 1997). "Generally, debt actions are well suited for summary judgment. Because 'of the relative simplicity of the issues involved, suits to enforce promissory notes are among the most

suitable classes of cases for summary judgment.'" *Pemberton Sales & Serv., Inc. v. Banco Popular de Puerto Rico*, 877 F. Supp. 961, 971 (D.V.I. 1994) (citations omitted).

### 2. Debt and Foreclosure

To succeed on a debt and foreclosure action, the plaintiff must show: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note. *Thompson v. Fla. Wood Treaters, Inc.,* 2009 WL 4730784, at *3 (D.V.I. Dec. 6, 2009) (citing *Nat'l Union Fire Ins. Co. v. Saunders*, 899 F. Supp. 452, 455 (C.D. Cal. 1993)); *see also* Am. Jur. 2d Mortgages § 633 (2008) (foreclosure requires valid mortgage, default on part of mortgagor, and foreclosure in compliance with terms of contract).

### 3. Admissions Under Fed. R. Civ. P. 36

Federal Rule of Civil Procedure 36 provides that a party may serve on another party "a written request to admit" any "facts, the application of law to fact, or opinions about either; and the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1)(A) and (B). The Rule further provides that, if a party does not answer within thirty days of service, the matter for which the admission is sought is deemed admitted. Fed. R. Civ. P. 36(a)(3). Moreover, "[a] matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b); *see United States v. Pearson,* 2012 WL 924879, at *3 (D. Del. Mar. 19, 2012) (opining that "[r]egardless of the potential harshness of the result for failing to respond to Rule 36 discovery, the conclusive effect of requests for admission applies equally to those admissions made affirmatively and those established by default as a result of a party's neglect to respond. The Third Circuit has held such

admissions under Rule 36 are sufficient to support entry of summary judgment.") (citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 178 (3d Cir. 1990)).

### B. Analysis

#### 1. LPP's Motion for Summary Judgment against Arthur Ferris

##### a. The Foreclosure Cause of Action

LPP has provided evidence to support the elements of its foreclosure cause of action against Arthur Ferris. LPP served Requests for Admissions on Arthur Ferris and Bobby Ferris. Neither Arthur nor Bobby Ferris responded. Accordingly, the facts therein are "conclusively established." Fed. R. Civ. P. 36(b); *Pearson*, 2012 WL 924879, at *3.

In LPP's Request for Admissions, Arthur Ferris admitted that he signed the original Note and Mortgage. (Dkt. No. 38-1 ¶¶ 9, 13). In addition, the affidavit Arthur Ferris provided in opposition to LPP's Motion for Summary Judgment stated that he executed the Mortgage (although he disputed the amount due). (Dkt. No. 51-1, ¶ 2). This evidence suffices to show that Arthur Ferris executed the Note and Mortgage at issue, which was assigned from SBA to LPP in 2001. (Dkt. No. 44-3 at 7, 9).

With regard to the second element required to establish a foreclosure cause of action— that the debtor defaulted under the terms of the Note and Mortgage—LPP provided evidence that Arthur Ferris defaulted by failing to make the payments due under those instruments. The Requests for Admissions provide that the "loan represented by the Note is in default." (Dkt. No. 38-1 at ¶ 4). The Affidavit of Mr. Wheatly, who reviewed and was personally familiar with LPP's records concerning this loan, averred that "[d]ue to non-payment of monthly installments, the Loan represented by the Note is in default. . . . Defendant[ has] failed to comply with the

terms and conditions of the Note [and] Mortgage. . . and [is] in default under those instruments, despite demand, for failing to pay principal and interest when due." (Dkt. No. 44-10, ¶¶ 8, 9).

Finally, LPP demonstrated that it is authorized to foreclose on the Property mortgaged as security for the Note. The Mortgage provides that Arthur Ferris was required to "promptly pay the indebtedness evidenced by said promissory note at the times and in the manner therein provided." (Dkt. No. 44-2, ¶ 1a.). The Mortgage further provides that if Arthur Ferris defaulted under the obligations contained in the Mortgage by failing to pay the indebtedness when due, or failed to perform "any covenant or agreement of this instrument or the promissory note secured hereby, the entire indebtedness hereby secured shall immediately become due, payable, and collectible without notice"; that "the mortgagee or his assigns may . . . sell said property without appraisement"; and that the Property may be sold at a judicial foreclosure sale. *Id.* ¶ 3.

The Court finds that LPP has shown that no issue of material fact exists on the foreclosure cause of action. The burden shifts to Defendant Arthur Ferris to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in [Defendants'] favor" on this claim. *Ridgewood Bd. of Educ.*, 172 F.3d at 252. In his Opposition, Arthur Ferris contests only the amount LPP claims is due on the Note. This argument goes to the debt cause of action, discussed below, not the foreclosure claim.

Accordingly, in view of Arthur Ferris' admissions and the other record evidence, the Court will grant LPP's Motion for Summary Judgment against Defendants Arthur Ferris on its foreclosure cause of action. In addition, summary judgment against VIBIR is appropriate.

**b. The Debt Cause of Action**

In his Declaration, Mr. Wheatly asserted that, as of July 26, 2012, Arthur Ferris owed LPP $104,895.19 pursuant to the terms of the loan documents—consisting of $36,282.62 in

principal; $18,691.24 in accrued interest; and $49,921.33 for "payment of delinquent taxes, force place insurance, legal fees and costs to date, with additional interest accruing from July 27, 2012 at the rate of $3.98 per diem" until the date of judgment. (Dkt. No. 44-10 ¶ 10). Mr. Wheatly's July 2013 affidavit represented that the $49,921.33 in costs was broken down as follows: $3,301.61 in real property taxes; $12,882.95 in force place insurance; and $33,736.77 in legal fees and litigation costs. He further documented the payments for taxes and insurance. (Dkt. Nos. 59-1 and 59-3). Mr. Wheatly also indicated that LPP had not charged interest on the amounts paid for taxes, insurance, and legal fees. (Dkt. No. 59-1 ¶ 7).

In his Opposition to LPP's Motion for Summary Judgment, Arthur Ferris challenged only the debt cause of action.[2] He states in his Affidavit that, while he had executed the $55,600 Mortgage, "the amount was reduced to $45,000." (Dkt. No. 51-1 at ¶ 2). He attached a letter addressed to him from the SBA, dated May 19, 1992, which indicates, *inter alia*, that he was past due on his loan, and that his "loan has been reduced from $55,600 to $45,000.00." *Id.*, Ex. A. Mr. Ferris concludes: "[b]ecause of the reduction in the amount of the mortgage, and because of payments I have made, I do not believe that I owe the sum of $104,895.19, as stated by LPP Mortgage, Ltd." *Id.* at ¶ 4.

Mr. Ferris' affidavit does not create a genuine issue of material fact as to the debt cause of action. As indicated above, LPP provided an affidavit by Account Officer Ralph Wheatly who asserted that the total amount due includes $36,282.62 in principal. (Dkt. No. 44-10, ¶ 10). LPP also provided a "Further Affidavit of Account Officer" which contained the payment history on

---

[2] Arthur Ferris' Opposition fails to specifically address LPP's Statement of Facts and fails to cite to "the precise portions of the record" supporting his contentions that there are material issues of fact, as required by Local Rule of Civil Procedure 56.1(b). This non-compliance with the Local Rules of Civil Procedure "may result in a finding that the asserted facts are not disputed for the purposes of summary judgment." (LRCi. 56.1(d)). In addition, it hinders the Court's ability to evaluate Mr. Ferris' argument.

the loan, and again showing the principal balance due as $36,282.62. (Dkt. Nos. 59-1, 59-3). Mr. Ferris does not challenge in any tangible way the principal balance due—set forth in two sworn affidavits of Mr. Wheatly—or the payment history provided. His "belief" that he does not owe what LPP claims "cannot substitute for evidence showing a material question of fact as to the amount owed." *United States v. Christopher,* 2012 WL 2062360, at *5 (D.V.I. June 8, 2012) (unsubstantiated "belief" by plaintiff that she provided notice of medical malpractice claim to insurer during the contractual reporting period did not create genuine issue of fact as to whether claim was timely because it was "too speculative") (citing *Lexington Ins. Co. v. W. Pa. Hosp.*, 423 F.3d 318, 332 (3d Cir. 2005); *Schoonejongen v. Curtiss-Wright Corp.*, 143 F.3d 120, 130 (3d Cir. 1998) ("a nonmoving party . . . cannot defeat summary judgment simply by asserting that a jury might disbelieve an opponent's affidavit [as to a material fact].") (citations omitted); *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985) ("Although the burden of proof rests initially with the party moving for summary judgment, when a motion is made and supported, the nonmoving party must produce specific facts showing that there is a genuine issue for trial, rather than resting upon the assertions of pleading; a genuine issue means that the evidence must create a fair doubt, and wholly speculative assertions will not suffice.")).

In view of the foregoing, the Court will grant summary judgment to Plaintiff LPP on the debt cause of action. The Court finds that the total amount of damages in this action is: $36,282.62 in principal, $18,691.24 in interest until July 26, 2012, accruing at a rate of $3.98 per diem until the date of Judgment, and at the statutory rate of 4.00% per annum thereafter; and $16,184.56 for payment of delinquent taxes and force place insurance; for a total amount due of $71,158.42.

### c. Attorney's Fees and Costs

The Note and Mortgage both provide that the mortgagee is liable for "*reasonable attorney's fees and costs*" expended by the holder of the Note and Mortgage in connection with the satisfaction of the indebtedness. *See* Dkt. No. 44-1 at 3; Dkt. No. 44-2 at 4, ¶ 4 (emphasis added). Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. The statute states, in pertinent part: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . ." 5 V.I.C. § 541(b). While reasonable attorney's fees are provided for by the terms of the contracts, the Court will look to the body of case law interpreting § 541(b) for guidance in assessing what attorney's fees may be "reasonable." *Cf. Williams v. United Corp.*, 2009 WL 321339, at *2 (V.I. Jan. 7, 2009) (observing that the inclusion of attorney's fees within the definition of reasonable costs is derived from § 541).

"To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J.*, *Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison with prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and

15

reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

LPP, which seeks a total of $25,491.50 in attorney's fees, submitted an affidavit from Attorney Dollison who stated that his law firm was retained to represent LPP in the instant matter as well as "the previous foreclosure matter." (Dkt. No. 45-2 ¶¶ 2, 3). The Memorandum of Costs indicates that the previous matter concerns a Superior Court action dating from July 15, 2005 and continuing through early 2011. Attorney Dollison did not describe the previous matter, or how it was related to this case—which was filed in federal court on September 28, 2011. Counsel also does not explain why the fees and costs for the Superior Court case should be incorporated into the attorney's fees arising from this federal court action. Accordingly, the attorney's fees from 2005 until the date this action was filed on September 28, 2011—in the amount of $13,494.50—will be disallowed because LPP has failed to satisfy its burden of demonstrating how these charges were "reasonably expended" to advance *this* litigation. *Gulfstream III Assocs., Inc.*, 995 F.2d at 420; *see also Bluebeard's Castle, Inc.*, 2009 WL 891896, at *13 (D.V.I. Apr 1, 2009) (disallowing reimbursement for items that appeared to be "unrelated to this litigation" as unreasonable and therefore not compensable).

With regard to the second element to determine reasonableness of attorney's fees—the hourly rate—Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012). Mr. Dollison's affidavit provides the names of the firm's employees who worked on this case and their billing rates. (Dkt. Nos. 45-2, 45-3). Attorney Dollison's rate was $225-$250 per hour; Irene Greaux's billing rate was "$120-130" per hour; James Bernier's billing rate was "$200-$250" per hour; Gynah Guishard Henry's billing rate was

$150 per hour; Brenda Gibs' billing "history" was $150 per hour; and Tracy Myers' billing rate was $225 per hour. *Id.*[3] The Court concludes that the hourly rates charged here are reasonable, as they fall within the scope of reasonable hourly rates in the Virgin Islands. See *Rode*, 892 F.2d at 1183.

The Court finds that $11,997.00 in attorney's fees, dating from September 28, 2011 were "reasonably expended" by counsel in furtherance of this action. This matter is not a "run-of-the-mill debt and foreclosure" default judgment action, *Firstbank P.R. v. Caribbean Island Adventure, Inc.,* 2008 WL 783537, at *2 (D.V.I. Mar. 20, 2008). *See, e.g., Flagstar Bank FSB v. Rivers,* No. 12-cv-93, (D.V.I. Mar. 18, 2014) (awarding $2,107.50 in attorney's fees where counsel spent a total of 10.00 hours on the case); *Flagstar Bank FSB v. Ramsey*, No. 12-cv-59 (D.V.I. Mar. 5, 2014) (awarding $1,607.50 in attorney's fees where counsel spent a total of 8.25 hours on the case); *Flagstar Bank FSB v. Smith*, No. 11-cv-78 (D.V.I. Jan. 28, 2014) (awarding $3,388.75 in attorney's fees where counsel spent a total of 15.25 hours on the case). Rather, this case involved multiple parties, cross-claims by Flagstar and VIBIR on the priority of liens, as well as discovery and summary judgment litigation. Attorney Dollison's affidavit with an attached thirteen-page Memorandum of Costs—which contained columns for the date work was performed, by whom, a brief description of the work performed, the time spent and hourly rate, and the total dollar amount billed (Dkt. No. 45-3)—reflects the reasonableness of the attorney's fees expended.

---

[3] In the supplemental affidavit filed by Mr. Dollison, he identified Ms. Greaux as his firm's Chief Litigation Paralegal and Ms. Henry and Ms. Gibs as paralegals; Ms. Myers as an associate; and Mr. Bernier as an associate who became a partner (which also accounted for the difference in his billing rate). The difference in Ms. Greaux's hourly billing rate resulted from "increased costs of living during this time period." (Dkt. No. 59-2).

With regard to costs, under the terms of the Mortgage, Arthur Ferris agreed to "pay such expenses and fees as may be incurred in the protection and maintenance of said property, including the fees of any attorney employed by the mortgagee for the collection of any or all of the indebtedness hereby secured, or for foreclosure by mortgagee's sale, or court proceedings[.]" (Dkt. No. 44-2, ¶ 1(c)). The Court infers that, in order for costs to be reimbursed, they must be reasonable. *Cf. Lewis v. Mazda Motor of Am.,* 2012 U.S. Dist. LEXIS 180222, at *7 (D.V.I. Dec. 20, 2012) (awarding reasonable costs in discovery dispute); *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *3 (D.V.I. Dec. 20, 2007) (opining that Virgin Islands fee-shifting statute governing the award of attorney's fees and costs permits reimbursement for reasonable fees and costs). LPP is seeking reimbursement of $2,199.82 for costs, including title searches, recording fees, legal research fees, travel expenses to St. Croix, as well as a number of items that list an amount billed but do not explain to what the cost refers. (Dkt. No. 45-3 at 13).

As with the attorney's fees, the Court will not reimburse the $1,218.36 in costs incurred prior to the September 2011 filing of the federal court Complaint, nor charges incurred after September 2011 that are not identified, as they have not been shown to be "reasonably expended" to advance this litigation.[4] *Gulfstream III Assocs., Inc.*, 995 F.2d at 420; *Bluebeard's Castle, Inc.*, 2009 WL 891896, at *13. The Court finds that the filing fees, recording fees, service of process fees, title search update, and travel, totaling $794.00, are reasonable and will be reimbursed. *See, e.g.*, *Equivest St. Thomas, Inc. v. Gov't of Virgin Islands*, 46 V.I. 447, 2004 WL 3037953 at *9–*10 (D.V.I. Dec. 31, 2004) (finding filing fees, process service fees, transcript purchase fees, witness fees, and travel expenses to be "reasonable expenses which are normally

---

[4] In the Memorandum of Costs dating from September 30, 2011, there are six entries in the cost section that provide a date, the initials of the person who incurred the cost, and a figure, but no description of what that cost represents. *See* Dkt. No. 45-3 at 13.

charged paying clients," and noting that it is "well settled" that 5 V.I.C. § 541 gives the Court discretion to award fees and costs to prevailing parties).

In sum, the Court will award to LLP $11,997.00 in attorney's fees and $794.00 in costs, for a total of $12,791.00 in attorney's fees and costs. Together with the $71,158.42 due for principal, interest, and payment of force place insurance and delinquent taxes, the total amount due to LPP through July 26, 2012 is $83,949.42.

### 2. Flagstar's Motion for Summary Judgment Against Bobby Ferris and VIBIR

#### a. The Foreclosure Cause of Action

Flagstar has provided evidence to support all of the elements of its foreclosure cause of action against Cross-Claimant Bobby Ferris. In Flagstar's Requests for Admissions, Bobby Ferris admits that he executed and delivered to Flagstar the Note in the amount of $184,000.00. (Dkt. No. 39-1 ¶ 1).[5] The evidence also shows that Bobby Ferris executed the Flagstar Mortgage—a fact that Bobby Ferris does not dispute. (Dkt. No. 18-2). This evidence suffices to show that Bobby Ferris executed the Note and Mortgage at issue.

Flagstar also provided evidence that Defendant Bobby Ferris defaulted under the terms of the Flagstar Note and Mortgage. The Admissions provide that: Bobby Ferris failed to comply with the terms and conditions of those documents and was in default because he failed to pay principal and interest when due; that he was notified of his default by two letters from Flagstar; and that he failed to cure the default. (Dkt. No. 39-1 ¶¶ 8-13; Dkt. Nos. 18-3, 18-4). In addition, the July 2012 Declaration of Amounts Due, signed by Mr. Kelly, reiterated these same facts, adding that when Bobby Ferris failed to cure the default, Flagstar accelerated the loan pursuant to the terms of the Note, and that Bobby Ferris remained in default. (Dkt. No. 41-1 ¶¶ 9-15).

---

[5] The Court, by Order dated August 3, 2012, deemed Flagstar's Requests for Admissions admitted. (Dkt. No. 47).

Flagstar has also demonstrated that it is entitled to foreclose on the Property mortgaged as security for the Flagstar Note. The Mortgage provides that Bobby Ferris agreed to "pay when due the principal of, and interest on, the debt evidenced by the Note"; that failure to pay those sums when due constitutes a default; and failure to cure the default "may result in acceleration of the sums secured by this [Mortgage] and foreclosure and sale of the Property." (Dkt. No. 18-2, ¶¶ 1, 22).

The Court finds that Flagstar has demonstrated that no issue of material fact exists on the foreclosure cause of action. The burden shifts to Defendant Bobby Ferris to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in [Defendants'] favor" on this claim. *Ridgewood Bd. of Educ.*, 172 F.3d at 252. In his Opposition to the Motion for Summary Judgment, Bobby Ferris contests only the amount Flagstar claims is due on the Note. This argument goes to the debt cause of action, discussed below, not the foreclosure claim.

Accordingly, in view of the Admissions and the other record evidence, the Court will grant Flagstar's Motion for Summary Judgment against Cross-Claim Defendant Bobby Ferris on its foreclosure cause of action. In addition, summary judgment against VIBIR is appropriate.

### b. The Debt Cause of Action

In his July 2012 Declaration of Amounts Due, Flagstar Vice President Kelly stated that, as of August 1, 2012, there was due and owing to Flagstar the principal sum of $179,319.66 plus accrued interest in the amount of $32,875.20, which continued to accrue at the rate of $33.78 per diem; plus late charges in the amount of $1,813.20, plus escrow advances in the amount of $7,475.53, plus inspection fees in the amount of $369.50; for a total of $221,853.09. (Dkt. No. 41-1 ¶ 12). In the Supplemental Declaration of Amounts Due, filed by Flagstar in July 2013,

Flagstar Assistant Vice President Kevin Paperd averred that, as of July 19, 2013, there was due

and owing to Flagstar the principal sum of $179,319.66; plus accrued interest in the amount of

$44,784.02; plus late charges in the amount of $2,598.92; plus escrow advances in the amount of

$15,137.99; plus inspection fees in the amount of $498.00, for a total of $242,338.92. (Dkt. No.

60-1 ¶ 10).

In his Opposition to Flagstar's Motion for Summary Judgment, Bobby Ferris challenged

the debt cause of action, stating only that: "I paid on the promissory note for two years prior to it

going into default, and I do not believe that Flagstar has correctly calculated the amounts due and

owing under the promissory note." (Dkt. No. 50-1).[6]

Flagstar submitted a second Declaration in response to Bobby Ferris' Opposition, Mr.

Kelly averred that, from September 2007 through December 2009, Bobby Ferris made all the

monthly payments required under the loan documents; that his payments in January, February,

and March 2010 were reversed due to insufficient funds; and, thereafter, Bobby Ferris made no

further payments on the Note. (Dkt. No. 52-2 ¶¶ 5-9). Mr. Kelly also stated that the Declaration

of Amounts Due (Dkt. No. 41-1) provided Bobby Ferris with proper credit for all of the

payments he had made. (Dkt. No. 52-2 ¶ 11). In addition, Bobby Ferris admitted, through the

Flagstar Requests for Admission which the Court deemed admitted, that he failed to cure his

default under the Note and that "there is due and owing to Flagstar the sum of $213,797.26

through December 1, 2011 with interest and late charges accruing thereafter until judgment as set

---

[6]  Mr. Ferris' Opposition fails to specifically address Flagstar's Statement of Facts and fails to cite to "the precise portions of the record" supporting his contentions that there are material issues of fact, as required by Local Rule of Civil Procedure 56.1(b). This non-compliance with the Local Rules of Civil Procedure "may result in a finding that the asserted facts are not disputed for the purposes of summary judgment." (LRCi. 56.1(d)). In addition, it hinders the Court's ability to evaluate Bobby Ferris' argument.

forth in the Note." (Dkt. No. 39-1 ¶ 13). This was the amount claimed in Flagstar's Cross-Claim against Bobby Ferris. (Dkt. No. 18).

For the same reasons that Defendant Arthur Ferris did not raise a genuine issue of material fact as to any elements of LPP's debt cause of action, Bobby Ferris also has not raised a genuine issue of material fact as to any elements of Flagstar's debt cause of action. He provided nothing to substantiate his "belief" that he owes less than the amount Flagstar's accounting provides that he owes. Flagstar noted that he produced no documents of any kind in response to its Request for Production of Documents. (Dkt. No. 52). Nor has he offered any evidence that would show payments he made for which Flagstar did not give him credit. Bobby Ferris' "belief" that he does not owe what Flagstar claims "cannot substitute for evidence showing a material question of fact as to the amount owed." *Christopher,* 2012 WL 2062360, at *5 (D.V.I. June 8, 2012) (citing cases).

Accordingly, the Court will grant Flagstar's Motion for Summary Judgment against Bobby Ferris on the debt cause of action. The Court finds that the amount of damages on Flagstar's Cross-Claim is: $179,319.66 in principal; $44,784.02 in accrued interest until July 19, 2013, accruing at a rate of $33.78 per diem until the date of Judgment, and at the statutory rate of 4.00% per annum thereafter; $2,598.92 in late charges; $15,137.99 in escrow advances; $498.00 in inspection fees; for a total amount due of $242,338.59.

### c.   Attorney's Fees and Costs

As indicated above, Flagstar's current counsel, W. Mark Hillsman, Esq., of Norman P. Jones, P.C., and its former counsel, A. Jennings Stone, Esq. of BoltNagi PC, submitted separate declarations and memoranda of costs in support of their respective requests for attorney's fees. Attorney Hillsman seeks $15,625.00 in attorney's fees dating from November 2011 to July 2012

as compensation for 66.3 hours spent on this case, billed at $250.00 per hour, and $1,700.50 in costs. (Dkt. No. 41-2). Attorney Hillman's billing entries are detailed and thorough, and show time billed for, *inter alia*, reviewing the case file, answering the complaint and filing a cross-claim against Bobby Ferris, preparing discovery documents including a motion to compel, attending court conferences and mediation, and drafting the summary judgment motion. The Court finds that the time spent by Mr. Hillman and his hourly rate are reasonable, and will approve the $15,625.00 in legal fees that he requests.

With regard to the $1,700.50 in costs that he seeks, Attorney Hillman's billing records indicate expenses of $204.75 to attend the Rule 16 conference on St. Croix, $191.00 to attend mediation on St. Croix, and a $550.00 appraisal fee, totaling $945.75. Because Attorney Hillman provides no support for the additional $754.75 that he seeks, the Court will award $945.75 in costs to the Norman C. Jones P.C. firm, for a total amount due of $16,570.75 in attorney's fees and costs. (Dkt. No. 41-2).

On the other hand, the Declaration and Memorandum of Costs submitted by Attorney Stone suffers from the same problem that affected the Declaration and Memorandum of Costs submitted by LPP's counsel: it seeks reimbursement for fees and costs dating from 2010 and 2011—before Flagstar's Answer and Counter-Claim were filed in this Court. (Dkt. No. 41-3). Counsel does not explain what these amounts pertain to, and why they are related to the federal case and should be compensated. The Court therefore finds that the attorney's fees and costs billed prior to September 2011 have not been shown to be "reasonably expended" to advance this litigation and therefore will not be allowed. *See Gulfstream III Assocs., Inc.*, 995 F.2d at 420; *Bluebeard's Castle, Inc.*, 2009 WL 891896, at *13. The Court will award BoltNagi $1,187.50 in

attorney's fees, dating from October 7, 2011, and $105.00 in costs (for an on-line search on Accurint and a title search update), totaling $1,292.50.

In conclusion, the Court will grant summary judgment to Defendant/Cross-Claimant Flagstar on its debt cause of action. The Court finds that the amount due on this Cross-Claim is $242,338.59 (comprised of $179,319.66 in principal, $44,784.02 in accrued interest until July 19, 2013, $2,598.92 in late charges, $15,137.99 in escrow advances, and $498.00 in inspection fees). Together with the attorney's fees and costs totaling $16,570.75 due to Norman C. Jones P.C. and $1,292.50 in attorney's fees and costs due to BoltNagi, the total amount due to Flagstar is $260,201.84 through July 19, 2013.

### 3. Priority of the Mortgages and Liens

Flagstar has conceded that "[t]here is no issue of priority of interests as the mortgage of plaintiff LPP Mortgage, Ltd. is first in time having been executed and recorded against the mortgaged property prior to Flagstar's mortgage, a fact which Flagstar does not dispute." (Dkt. No. 41 at 2). VIBIR admitted in its Answer to Flagstar's Cross-Claim that its liens are subordinate to LPP's and Flagstar's liens, as they were filed after LPP's and Flagstar's Mortgages were recorded. (Dkt. No. 18, ¶ 5; Dkt. No. 28, ¶ 5). Thus, the priority of the liens are: LPP's Mortgage lien; Flagstar's Mortgage lien; and any valid liens that VIBIR may claim on the Property.[7] The Court will therefore grant LPP's Motion for Summary Judgment against Flagstar and VIBIR, and Flagstar's Motion for Summary Judgment against VIBIR on the priority of liens.

---

[7] The Virgin Islands is a race notice jurisdiction. *Brodhurst v. Frazier*, 2012 WL 8123137, at *4 (V.I. Terr. Ct. Sept. 12, 2012). This means that "'as between two competing parties[,] the interest of the party who first records the instrument will prevail.'" *Moco Investments, Inc. v. United States*, 362 F. App'x 305, 309 (3d Cir. 2010) (citation omitted); *see also* Restatement (Third) of Property: Mortgages § 7.1 cmt. a (2012) ("Generally, the priority of mortgages and other interests in real estate is determined by the chronological order of their creation."). The mortgage that was executed by Defendant Arthur Ferris was recorded in January 1991 (Dkt. No. 44-2); the

### III.   CONCLUSION

For the reasons discussed above, the Court: (1) grants in part and denies in part LPP's Motion for Summary Judgment (Dkt. No. 43); (2) grants in part and denies in part Defendant/Cross-Claimant Flagstar's Motion for Summary Judgment (Dkt. No. 40); and (3) determines the priority of liens as follows: (a) LPP's Mortgage lien; (b) Flagstar's Mortgage lien; and (c) VIBIR's two liens. Separate Judgments and Orders, relating to LPP's and Flagstar's respective Motions for Summary Judgment, accompany this Memorandum Opinion.

Date: June 2, 2014                              _____/s/_____
                                                WILMA A. LEWIS
                                                Chief Judge

---

assignment of that mortgage to LPP was recorded in August 2001 and May 2002. (Dkt. No. 44-3). MERS, as nominee for Flagstar, recorded its mortgage on August 3, 2007. (Dkt. No. 44-6). The Mortgage was later assigned to Flagstar, and the assignment was recorded on June 28, 2010. (Dkt. No. 44-7). VIBIR asserts that, on November 12, 2009 and March 25, 2010, it recorded two liens against the Property for unpaid income taxes. (Dkt. Nos. 44-8 & 44-9).